IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Armando Marquez Friend, et al., | ) | No. CV 03-343-TUC-CKJ |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Time Manufacturing Company, et al., | ) | |
| Defendants. | ) | |

Pending before the Court is Defendant's, Time Manufacturing Company ("Time"), Motion to Strike Plaintiffs' Expert Charles Rasnic. For the reasons stated below, the motion is denied.

**I. Background**

The Plaintiff, Armando Friend, was employed as a cable technician for Cox Cable. On January 14, 2002, he was attempting to disconnect cable service in the alley behind a customer's house in Douglas, Arizona. To perform this task, Friend had to rise to the height of the 18 foot cable lines connected between two utility poles. As such, Friend climbed into the bucket of a Versalift Aerial Platform Lift manufactured by Time. To raise the bucket, the operator had to press the master control button to start the motor, and then use toggle switches to raise the extending arm called a boom. Unfortunately, the bucket rose eleven feet too high whereby Friend made contact with power lines resulting in his electrocution. Friend argues that these electrified lines caused him to suffer pain and suffering, including months

of skin grafts, cleaning and removal of dead tissue, and he now has scarring on much of his body, limb weakness, and mental anguish.

## II. Discussion

### A. Standard for Evaluating Expert Testimony

Friend argues that his injuries were caused by the defective Time equipment which malfunctioned causing the bucket to continue rising into the power lines. Time argues that the expert testimony Friend offers to support this contention is unreliable, and must be excluded pursuant to *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert*, 509 U.S. at 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). A trial court's gatekeeper duty requires two separate inquires: the witness must be qualified to offer the opinions he or she is espousing and the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness' opinions are both relevant and reliable. *Kumho Tire*, 526 U.S. at 141, 152; *Bourjaily v. United States,* 483 U.S. 171, 175 (1987) (noting standard governing Rule 104(a), Fed. R. Civ. P.).

Under the first prong of *Daubert*'s two-prong test for admissibility of expert testimony, "[t]he adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The trial court's obligation under Rule 702 and *Daubert* is to determine evidentiary reliability, or trustworthiness. *See id.* at 590 n. 9.

1 Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science--the focus is on principles and methodology, not conclusions. *See id.* at 595-96. The Supreme Court listed four non-exclusive factors for consideration in the reliability analysis: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *See id.* at 593-94. As emphasized in *Kumho Tire,* "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.,* 526 U.S. at 141-42. An expert's testimony may excluded where it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit* guesswork. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered"); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence).

Rule 702's second prong concerns relevancy, or "fit." *See Daubert*, 509 U.S. at 591. The scientific knowledge must be connected to the question at issue. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994), *cert. denied sub nom.*, *General Electric Company v. Ingram*, 513 U.S. 1190 (1995). The trial court "must ensure that the proposed expert testimony is 'relevant to the task at hand,' ... i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315. "[T]he standard for fit is higher than bare relevance." *In re Paoli*, 35 F.3d at 745. Scientific expert testimony introduces special dangers to the fact-finding process because it "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (internal quotation marks and citation omitted). Therefore, federal judges must exclude proffered

1   scientific evidence under Rule 702 unless they are convinced that it speaks clearly and
2   directly to an issue in dispute in the case, and that it will not mislead the jury. *Daubert II*, 43
3   F.3d at 1321.

4   Lastly, however, the Court's *Daubert* gatekeeper function does not replace the role of the
5   factfinder. Indeed, the district court is not to "evaluate the credibility of opposing experts
6   and the persuasiveness of competing scientific studies[.]" *Quiet Technology DC-8, Inc. v.*
7   *Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003), *quoting Ambrosini v.*
8   *Labarraque*, 101 F.3d 129, 141 (D.C.Cir. 1996). The jury is entitled to hear expert testimony
9   and decide whether to accept or reject it after considering whether predicate facts on which
10  the expert relied were accurate. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (11th Cir. 2002).
11  As such, the Ninth Circuit has emphasized:

> Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony. In arriving at a conclusion, the fact finder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony–they go to the weight, not the admissibility.

18  *Kennedy v. Collagen Corporation*, 161 F.3d 1226, 1230-31 (9th Cir. 1998). A district court's
19  decision pertaining to the admissibility of expert testimony is reviewed for an abuse of
20  discretion. *See U.S. v. Rahm*, 993 F.2d 1405, 1410 (9th Cir. 1993).

21  **B. Admissibility**

22  A review of the briefs shows that the main dispute in regards to Rasnic's testimony is
23  whether it is reliable. Time does not dispute that Rasnic is a "qualified" expert on the subject
24  matter in question. Rather, Time mainly argues that an analysis of Rasnic's proposed expert
25  report and testimony shows that it is simply unreliable for several reasons. As a threshold
26  matter, Time emphasizes that due to his electrocution, Friend does not remember anything
27  from the accident. As such, Friend relies entirely on Rasnic's testimony to support his
28  contention of a mechanical failure causing his injuries. First, Time argues that Rasnic can not

1 specify how the dual machine failure occurred causing the bucket to continually move
2 upward into the power lines. Time argues that Rasnic could only narrow down the alleged
3 failure to three possibilities which are: (1) the master control contacts welded shut allowing
4 the pump motor to continue running in conjunction with function switches that welded shut;
5 (2) the motor control contactor stuck and simultaneously a spool valve on the hydraulic valve
6 was stuck open; and (3) the master control contacts welded shut and the spool valve was
7 stuck open. According to Rasnic, any one of these failures would have caused the bucket to
8 continue rising; however, Rasnic believes that scenario number two is most likely what
9 happened. Next, Time argues that Rasnic has no evidence of a dual machine failure. *Id.* at
10 8. Time argues that Rasnic's theory is not supported by scientific or forensic evidence, he
11 has not replicated his theory of dual failure through testing, Rasnic's examination of the
12 equipment did not show the parts in question were welded, and Rasnic has no evidence of
13 similar accidents. Time also argues that Rasnic can not eliminate other potential causes of
14 the accident suggested by counsel, such as Friend's own negligence in operating the bucket,
15 Friend attempting to visualize the cable line, and Friend moving the bucket higher to sight
16 see. Lastly, Time argues that Rasnic's contention that an emergency stop button on the
17 bucket would have prevented the accident (i.e., making it defective) is without basis. *Id.*
18 Namely, Time argues that Rasnic admits that he does not know if Friend knew he was in
19 danger, if Friend ever looked for an emergency stop button, or attempted to reach for an
20 emergency stop button; as such, Time argues that Rasnic's conclusion that the bucket was
21 defective because it did not have an emergency stop button is without merit.

22 In response, Friend argues that to a reasonable degree of engineering probability, Rasnic
23 concluded that a temporary contact weld of a contactor in conjunction with a control valve
24 failure led to the boom rising uncontrollably upwards, and that this known potential
25 mechanical failure could not be stopped by Friend because Time failed to install an
26 emergency stop button; as such, Friend argues that Rasnic's opinion meets the *Daubert*
27 standard for expert testimony. The Court agrees. Friend points out that there is substantial
28 evidence supporting the first part of Rasnic's conclusion that there was a control valve stick.

1 For example, Time's operating manual describes such a control valve stick under its
2 emergency procedures, numerous individuals have experienced malfunctions with the
3 machine in question, Rasnic designed similar devices which recognized the problem of
4 sticking valves, and sticking valves are a common phenomenon recognized in industry
5 publications and research. Based on these circumstances, Friend stresses that Rasnic
6 correctly found that there was likely a control valve stick. As to the second part of Rasnic's
7 conclusion that there was a temporary contact weld in the contactor that controls power to
8 the hydraulic pump, Friend also argues that there is substantial evidence to support this
9 finding.[1] Friend points out that the contactor at issue is the very same contactor that stuck
10 immediately after the accident, during Cox Cable's inspection of the equipment, and which
11 stuck again months later. Further, this is the same contactor that would stick causing the
12 motor to run for up to thirty minutes, and it was the same contactor that was later replaced,
13 and Time knew of similar devices failing.

14 In addition to relying on these facts, Rasnic also relied on research of other industry
15 experts and testimony to support his finding of a temporary contact weld in the contactor that
16 controls power to the hydraulic pump. Friend argues that as these two failures caused an
17 uncontrollable lift of the boom, the only feasible way to stop such a failure was through an
18 emergency stop button which was not included on this machine despite the fact that it was
19 contemplated by Time engineers and referenced in their manuals. In reaching his conclusion,
20 Friend argues that Rasnic relied on generally accepted engineering principles and his
21 extensive experience in the field. Specifically, Friend argues that Rasnic formed a hypothesis
22 that the boom uncontrollably elevated, and used "failure tree analysis" in conjunction with
23 testing, witness statements, post accident machine inspections, review of research, his
24 experience in designing similar machines, and Time's admissions and manuals in determining

---

26 [1]As mentioned above, one of these mechanical failures alone would not cause the
27 boom to uncontrollably rise. Rather, only two mechanical failures combined would have
caused the boom to uncontrollably rise; as such, Rasnic identifies the most likely two failures
28 causing the accident in question.

- 6 -

how the equipment malfunctioned. Accordingly, despite the arguments made by Defendant which are more properly issues to be considered by the jury, the Court finds that Rasnic reached his conclusions within a reasonable degree of engineering certainty, and the fact that Rasnic has not ruled out every possible scenario raised by Time does not render such opinion unreliable. *See*, *e.g.*, *U.S. v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993)(in reversing the district court's exclusion of expert testimony, the Ninth Circuit stated that "[c]ertainty is an unreasonable expectation in the realm of expert opinion. [An expert's] use of the conditional 'could' in expressing her conclusion is neither unusual nor disqualifying as to her testimony. In any area of science . . . expecting an expert to reach a conclusion without the slightest doubt as to its accuracy is exceedingly unrealistic. Experts ordinarily deal in probabilities, in 'coulds' and 'mights' . . . It is the rare expert who is willing to opine conclusively about a past occurrence."); *Kennedy*, 161 F.3d at 1230-31 ("Judges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert. The *Daubert* duty is to judge the reasoning used in forming an expert conclusion. The test is whether or not the reasoning is scientific and will assist the jury. If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony. In arriving at a conclusion, the fact finder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony–they go to the weight, not the admissibility.").

**III. Conclusion**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Time's Motion to Strike Plaintiff's Expert (Doc. #136) is **denied**;

(2) As the discovery and dispositive motion deadlines have already expired (Doc. #122), the parties shall submit their Joint Proposed Pretrial Order and Motions in Limine (if any) no later than 30 days after the filing date of this Order. *See* Doc. #19 (Scheduling Order at 4-5).

1

2   DATED this 7th day of October, 2005.

3

4

5

6

7

8

9

10

11   _____
12   Cindy K. Jorgenson
     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28