IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Armando Marquez Friend, et al., | ) | No. CIV 03-343-TUC-CKJ |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Time Manufacturing Company, et al., | ) | |
| Defendants. | ) | |

Pending before the Court are four motions *in limine* filed by Defendants and four motions *in limine* filed by Plaintiffs. The substance of the motions is discussed below.

**I. Background**

Armando Friend was employed as a cable technician for Cox Cable. On January 14, 2002, he was attempting to disconnect cable service in the alley behind a customer's house in Douglas, Arizona. To perform this task, Friend had to rise to the height of the 18-foot cable lines connected between two utility poles. As such, Friend climbed into the bucket of a Versalift Aerial Platform Lift manufactured by Time. To raise the bucket, the operator had to press the master control button to start the motor, and then use toggle switches to raise the extending arm called a boom. Unfortunately, the bucket rose eleven feet too high whereby Friend made contact with power lines and he received a severe electrical shock. Friend argues that these electrified lines caused him pain and suffering, including months of skin grafts, cleaning and removal of dead tissue, and he now has scarring on much of his body,

1 limb weakness, and mental anguish. Plaintiffs allege that Defendants' product was
2 defectively designed and are therefore strictly liable for the resulting injuries.

3 **II. General Standards of Admissibility: Fed. R. Evid. 401-403**

4 As reflected throughout the briefs, both parties largely argue that various pieces of
5 evidence are inadmissible as irrelevant or unduly prejudicial. Fed. R. Evid. 402 provides that
6 "all relevant evidence is admissible" and that "evidence which is not relevant is not
7 admissible." Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency
8 to make the existence of any fact that is of consequence to the determination of the action
9 more probable or less probable than it would be without the evidence." Fed. R. Evid. 403
10 provides that relevant evidence may be excluded if "its probative value is substantially
11 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury
12 . . ."

13 **III. Discussion**

14 **A. Defendants' Motions *In Limine***

15 **1. Defendants' Motion *In Limine* No. 1: Limitation on Medical Expense Claims**

16 Defendants move to limit Plaintiffs' medical expense recovery to: (1) the amount paid by
17 worker's compensation, and (2) to the amount of the bills that Defendants have received
18 through discovery. Additionally, Defendants argue that "[a]s there has never been proper
19 disclosure of any medical bills, plaintiffs should not be entitled to introduce any medical
20 bills."

21 The heart of the first dispute is whether the collateral source rule applies in this case.
22 Under the collateral source rule, "[p]ayments made to or benefits conferred on the injured
23 party from other sources are not credited against the tortfeasor's liability, although they cover
24 all or a part of the harm for which the tortfeasor is liable." Restatement (Second) of Torts §
25 920A(2) (1979). Plaintiffs are seeking to introduce into evidence the amounts charged by
26 various health care providers, even though the state workers' compensation program has
27 negotiated and paid lower rates in full satisfaction of the charges. The amount paid by the
28

workers' compensation carrier was approximately $283,668.92, but the full amount billed was more than $300,000.

In opposing the application of the collateral source rule to this case, Defendants rely on *Anderson v. Muniz*, 21 Ariz. App. 25, 515 P.2d 52 (Ct. App. 1973), for the proposition that Plaintiffs cannot recover medical expense damages greater than what the worker's compensation carrier has actually paid. In *Anderson*, the plaintiff was injured at work and received workers' compensation benefits, but also filed a third-party personal injury action. The treating physicians testified as to what they ordinarily would have charged for such treatment, although they had charged less due to a contractual requirement between the doctors and the workers' compensation fund. The court held: "If on retrial, it appears that the doctors' charges were based on a schedule of rates contractually agreed upon between them and the Fund, then the [plaintiff] can receive no more than those charges." *Id.* at 56.

Time argues *Anderson* is directly on point with the instant case. However, the Arizona Court of Appeals recently overruled *Anderson* in *Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, 129 P.3d 487 (Ct. App. Feb. 28, 2006). In *Lopez*, the plaintiff filed a negligence suit after she slipped and fell inside a Safeway store and was injured. Safeway filed a motion *in limine* to limit her to presenting evidence only of the actual amounts paid for her medical care. The plaintiff's medical bills were approximately $59,700, but more than $42,000 was written off as adjustments, making her actual costs about $16,000. The court distinguished *Anderson* on the grounds that the doctors in *Anderson* had *agreed to charge* the lower amount, whereas the doctors in *Lopez* had charged the full $59,700, but had *agreed to accept less than they charged*.

After drawing that distinction, the court went further to hold that "to the extent [*Anderson*] supports the broad proposition Safeway advocates, we overrule that portion of it." *Lopez* at ¶9. *Lopez* holds that a plaintiff is "entitled to claim and recover the full amount of her reasonable medical expenses *for which she was charged*, without any reduction for the amounts apparently written off by her healthcare providers pursuant to contractually agreed-upon rates with her medical insurance carriers." *Id.* at ¶26 (emphasis added). In the instant

- 3 -

1 case, the medical care providers also charged one rate, but after a negotiation, ultimately
2 agreed to accept less than they had charged. In light of the recent decision in *Lopez*, the
3 motion is denied.

4     Applying the collateral source rule in this case will mean Plaintiffs may be able to collect
5 a windfall of medical damages above and beyond what was actually paid. However, to bar
6 such recovery would benefit Defendants because, if they are liable for Plaintiffs' injuries,
7 they would not have to pay the full cost of the damages they caused. Public policy favors
8 compensating the injured plaintiff. "Because the law must sanction one windfall and deny
9 the other, it favors the victim of the wrong rather than the wrongdoer." *Lopez* at ¶26; *see also*
10 *Michael v. Cole*, 122 Ariz. 450, 452, 595 P.2d 995, 997 (1997), citing *Hall v. Olague*, 119
11 Ariz. 73, 74, 579 P.2d 577, 578 (1978) ("The collateral source rule is well established in
12 Arizona tort law. The rule is designed to avoid a windfall to the tortfeasor, if a choice must
13 be made between him and the injured party.").

14     Defendants filed their motion on January 16, 2006 and could not have known the Appeals
15 Court would overrule *Anderson*. Plaintiffs brought *Lopez* to the attention of the Court on
16 March 2, 2006 as a Supplemental Authority. Defendants filed a response on March 7, 2006,
17 arguing that Plaintiffs had improperly "attempt[ed] to further argue the relevant issues," and
18 asks the Court to strike the Supplemental Authority. Defendants argue that Plaintiffs'
19 contention that *Lopez* overruled *Anderson* is "nothing less than a pure misrepresentation."
20     Defendants write: "[*Lopez*] stated that *Anderson* was distinguishable because it involved
21 the worker's compensation setting. . . .The Court concluded *Anderson* was not applicable or
22 helpful to the parties in [*Lopez*] because the plaintiff in *Lopez* was not treated pursuant to a
23 worker's compensation claim." In a footnote, the *Lopez* court does note that Anderson arose
24 under workers' compensation, which is "controlled entirely by statute." *Id.* at ¶10, note 3.
25 However, this is hardly the lynchpin of the case's holding. Rather, the key is an analysis of
26 the collateral source rule. Had the distinction between Lopez' slip-and-fall as a grocery store
27 customer and the workplace injury in *Anderson* been sufficient to decide *Lopez*, the court
28

- 4 -

1  would not have continued to discuss the applicability of the collateral source rule over 15 of
2  the next 17 pages of its opinion.

3  Defendants also argue that *Lopez* "was expressly reliant on a stipulation of the parties in
4  the trial court that the plaintiff's gross amount of the bills were all reasonable and necessary.
5  The entire opinion upon *Lopez* rests on that stipulation, with the Court expressly indicating
6  the decision may have been different had such a stipulation not been entered." Defendants
7  do not offer a citation to the court's express indication that the decision may have been
8  different but for the stipulation. *Lopez* does discuss the stipulation, but only to dispose of a
9  claim by the plaintiff that the defendant had previously waived its right to pursue an appeal,
10 *Id.* at ¶6, and later to rule that by entering into the stipulation the defendant had waived its
11 right to appeal the question of the reasonable value of the medical services. *Id.* at ¶12, n. 4.

12 Regarding the second question in the motion, Defendants argue that Plaintiffs have failed
13 to disclose the net contractual amount in health care costs paid by the State Fund, and that
14 Plaintiffs' recovery should be limited to the amount represented in the bills already disclosed,
15 or that Plaintiffs should be precluded from offering any evidence of medical bills. Plaintiffs
16 asserted in their response that they have already supplied the documents sought by
17 Defendants. The Court cannot determine what documents were and were not provided. The
18 Court agrees that Defendants are entitled to these documents; however, even if the
19 documents have not yet been provided, a remedy barring introduction of all such records at
20 trial would be overly punitive. Therefore, the Court orders Plaintiffs to obtain and disclose
21 to Time any additional documents that the carrier may have in its possession regarding
22 provider charges and payments, and to do so within 30 days of the filing date of this Order.

23 **2. Defendants' Motion *In Limine* No. 2: Evidence of Prior Acts**

24 Defendants move to exclude any "evidence concerning any prior incidents or accidents
25 alleged to have occurred with the Versalift TEL-29N aerial lift in question, or the TEL-29N
26 generally, without having first established to the Court outside the presence of the
27 prospective or actual jurors the necessary predicate for the introduction of such evidence."
28 Defendants' motion is only granted to the extent that Plaintiff shall be required to establish

a proper foundation for the evidence in question. However, the Court does not have sufficient information to fully evaluate whether this foundation should be addressed outside the presence of the jury. Furthermore, if this foundation is addressed outside the presence of the jury, the Court does not have sufficient information to determine how many witnesses this will involve, how long such a foundational hearing will take, and whether it would be more efficient to address these issues prior to trial or in midst of trial (outside the jury's presence) as these issues arise. **In light of these considerations, the parties should be prepared to further discuss these issues at the pretrial conference.**[1]

### 3. Defendants' Motion *In Limine* No. 3: Post-Manufacturing and Industry Standards

Defendants move for the exclusion of evidence related to: (1) subsequent manufacturing and design modifications involving the TEL-29N; (2) the TEL-29N's non-compliance with industry standards adopted after the production of the TEL-29N; and (3) a comparison of the controls on the upper control panel of the TEL-29N with those on other aerial lifts designed in compliance with industry standards adopted in 2001.

Defendants cite Arizona law that disallows the use of "[e]vidence of any change made to the design or methods of manufacturing or testing the product or any similar product subsequent to the time the product was first sold by the defendant." A.R.S. § 12-686(2). However, in *Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 709 P.2d 876 (1985), the Arizona Supreme Court distinguished between the tests for negligence and strict product liability. While a plaintiff must prove a manufacturer acted unreasonably at the time of design in a suit over negligent design or manufacture, the inquiry in a strict liability suit is whether "the quality of the product may be measured not only by the information available to the

---

[1] In a footnote in its motion, Defendants also moved to exclude testimony about "any incident occurring after production and sale of this unit." However, Defendants did not cite any legal authority for this proposition and made no argument in relation to this issue. As such, this request is summarily denied; if necessary, Defendants may raise this issue again at trial. *See* LR Civ 7.2(b) and 7.2(i) (allowing a Court to dispose of a motion summarily if the moving party fails to support its motion with points and authorities).

- 6 -

manufacturer at the time of design, but also by the information available to the trier of fact at the time of trial." *Id.* at 247. This "hindsight" test allows the trier of fact to inquire as to whether "a reasonable manufacturer would continue to market his product in the same condition as he sold it to the plaintiff with knowledge of the potential dangerous consequences the trial just revealed." *Id.*, citing *Byrns v. Riddell, Inc.*, 113 Ariz. 264, 267, 550 P.2d 1065, 1068 (1976). Therefore, Plaintiffs may present evidence at trial of subsequent design modifications, such as that Defendants eliminated an emergency stop switch from the TEL-29N, as well as evidence that the TEL-29N was initially designed with the switch.[2]

Furthermore, evidence of post-sale changes is admissible for certain purposes, A.R.S. § 12-686 notwithstanding, including to show Defendants had knowledge of the danger posed by the product, the precautions necessary to correct the danger, and that the design was feasible. *See Readenour v. Marion Power Shovel, A Division of Dresser Industries, Inc.*, 149 Ariz. 442, 447-48, 719 P.2d 1058, 1063-65 (1986).[3] Therefore, evidence of post-manufacturing modifications, industry standards adopted after the subject model was manufactured, and comparisons to models designed in compliance with standards adopted after the subject model was manufactured are all probative in a products liability suit, and are therefore admissible. Defendants' motion is therefore denied.

### 4. Defendants' Motion *In Limine* No. 4: Comparison of TEL-29N and TEL-29N (TCI)

Defendants move to exclude evidence that would allow a comparison between the original TEL-29N and the TEL-29N (TCI) that Armando Friend was operating when he was injured. Defendants assert there is a crucial difference between the two products, specifically that the lift on the TEL-29N is powered by the truck's engine, while the lift on the TEL-29N (TCI)

---

[2] In any case, this evidence falls outside the scope of Defendants' motion since it occurred pre-sale.

[3] Defendants may request a proper limiting instruction related to these issues. *See Readenour*, 149 Ariz. at 450-52, 719 P.2d at 1066-1068.

- 7 -

is powered by a battery. However, Defendants do not explain how or why this should render such evidence irrelevant under the Federal Rules of Evidence. Plaintiffs counter by producing evidence that the manual for the TEL-29N shows that the product had included an Emergency Stop button previously, and that it was removed from the design. While Defendants can certainly offer evidence to explain why the Emergency Stop button was missing from the TEL-29N (TCI) and not the TEL-29N, evidence comparing the two models is admissible under Fed. R. Evid 401 and 402 to show that inclusion of an emergency stop switch was not only feasible, but in fact had occurred previously. Defendants' motion is denied.

**B. Plaintiffs' Motions *In Limine***

**1. Plaintiffs' Motion *In Limine* No. 1: Exclusion of Paul Condon's Animation of Accident Scene**

Plaintiffs have moved to exclude a computer animation depicting the accident scene created by Paul Condon, an expert retained by Defendants. Plaintiffs argue the animation was disclosed in an untimely fashion, and that in any event the animation lacks foundation, is hearsay, and does more than simply demonstrate the events.

Under Fed. R. Civ. P. 37, a Court has broad authority to impose sanctions on a party that fails to comply with a discovery order such as the Scheduling Order the Court issued on June 25, 2004. However, before imposing sanctions, the Court must consider a number of factors, including whether the purported delay resulted in prejudice. *Wendt v. Host Intern, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997). On June 25, 2004, the Court issued the following order: "On or before July 19, 2004, Time Manufacturing SHALL DISCLOSE the computer animation or mock-up model of the area prepared by Paul Condon." On July 16, 2004, Defendants provided what they described as "the computer imaging information created by Paul Condon, previously disclosed." However, Plaintiffs apparently lacked the software required to read the data. After exchanging letters with Plaintiffs, Defendants ultimately disclosed a copy of the animation in ordinary DVD format on February 4, 2005, with a supplemental disclosure on February 24, 2005.

1   Defendants argue they made extraordinary efforts to supply the data in a format useful to
2   Plaintiffs. Plaintiffs argue the "disclosures were late and would prejudice the Plaintiffs if
3   admitted," although they do not clarify the nature of that prejudice, specifically in terms of
4   how Plaintiffs were left with insufficient time to respond or review this evidence in their
5   preparation for trial in the more than 11 months between the receipt of the supplemental
6   DVD and the filing of this motion *in limine*. Because the supplemental DVD was supplied
7   to Plaintiffs more than 11 months prior to the filing of this motion on February 3, 2006, and
8   because Plaintiffs make no claim other than a conclusory assertion of prejudice, the Court
9   declines to exclude the animation on Plaintiffs' requested procedural grounds.

10   The Court now turns to the substantive nature of Plaintiffs' motion, which is that the
11   animation constitutes impermissible hearsay and expert testimony lacking a proper
12   foundation. Plaintiffs also argue the animation is biased in that it implicitly presents
13   Defendants' theory that Plaintiff intentionally or negligently lifted the bucket into the power
14   lines.

15   The animation at issue is the one disclosed on February 24, 2005. It is approximately 5
16   minutes and 30 seconds long. It depicts a computer animation of a man standing in a bucket
17   attached to the boom of a cable television service truck. The bucket then rises, pauses at one
18   set of power/cable lines for five seconds, and then continues to rise, stopping just before the
19   animated character would strike the power lines. Throughout the animation, the man is
20   looking over his left shoulder, and at no point does he look up or away, even as he is about
21   to collide with the power lines. However, the man's head adjusts slightly as he reaches the
22   first set of lines, and the character appears to focus on a line connection in front of him. As
23   the man continues to rise, his gaze appears to become fixed on something in the distance,
24   possibly a line connection of a nearby house.

25   There are also close-ups of the wires and connections and a lateral pan so that the viewer
26   can see a depiction of an adjacent alley. There is also a view over the top of the house to
27   show the connection of a wire to a nearby pole. This view shows the bucket operator rising
28   high enough to see over the top of a house in order to spot the connection of the wire running

1  between the pole and adjacent house. The man appears to collide with the wires while
2  looking at this connection.

3  There is no close-up view of the control panel, and one cannot see the bucket operator
4  using the switches, though his hands are at the control panel, the details of which are not
5  visible. Plaintiffs contend that the factual foundation of the animation is based only on
6  information provided by Defendants' attorney; however, Paul Condon, the individual who
7  created the animation, stated during his deposition that he visited the accident scene, took
8  measurements, and obtained the measurement specifications of the vehicle Friend was
9  operating.

10  The Ninth Circuit allows the use of computer animations. *Byrd v. Guess*, 137 F.3d 1126
11  (9th Cir. 1998)(no abuse of discretion when trial court admitted computer animation of a
12  shooting under condition that facial expressions were removed).[4] The use of computer
13  animations is allowed when it satisfies the usual foundational requirements for demonstrative
14  evidence. *See Bledsoe v. Salt River Valley Water Users' Assoc.*, 179 Ariz. 469, 472, 880 P.2d
15  689, 692 (Ct. App. 1994). "At a minimum, the animation's proponent must show the
16  computer simulation fairly and accurately depicts what it represents, whether through the
17  computer expert who prepared it or some other witness who is qualified to so testify, and the
18  opposing party must be afforded an opportunity for cross-examination." *Id.* Because
19  Plaintiffs will have the opportunity at trial to challenge the underlying foundation of the
20  animation through cross-examination and other means, the Court finds that there is no reason
21  to exclude the evidence on the basis of an inadequate foundation.

22  Although computer animations can be admitted to illustrate the opinion an expert has
23  about the cause of an accident, *see Datskow v. Teledyne Continental Motors Aircraft*
24  *Products, a Div. of Teledyne Industries, Inc.*, 826 F.Supp. 677 (W.D.N.Y. 1993), Defendants
25  assert in their response that the animation is not intended to "make conclusions about the

---

[4] A portion of this case pertaining to a standing issue was supceded by statute. *See Little v. City of Manhattan Beach*, 21 Fed. Appx. 651, 652 (9th Cir. 2001).

- 10 -

1 cause of the accident." Its purpose is to save time at trial because, according to Defendants, 2 without the animation, "counsel for both sides will spend an exorbitant and unnecessary 3 amount of time describing the location of the poles, the wires, the houses, and the truck." 4 Therefore, the question is simply whether the animation accurately demonstrates the scene 5 of the accident, and whether "the probative value is substantially outweighed by the danger 6 of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of 7 undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 8 403.

9 To the extent that the animation depicts the physical scene of the accident and the bucket 10 truck, the Court denies Plaintiffs' motion because there is no risk of prejudice or jury 11 confusion, and because it could help the jury picture the scene of the accident, saving 12 significant time at trial. However, to the extent the animation depicts a man inside the 13 moving bucket, the Court grants Plaintiffs' motion because of its potential for prejudice and 14 jury confusion based on the potentially false impression that the Plaintiff not only failed to 15 take any evasive action, but did not even realize he was about to hit the wires while 16 attempting to "sight the line," *i.e.*, viewing a cable connection from the pole to a nearby 17 house. It also appears to depict Defendants' theory that Armando Friend was careless and did 18 not realize he was about to collide with the wires. Therefore, Defendants may show its 19 computer animation provided it either removes the man from the bucket (leaving it empty), 20 or does not show the parts of the animation depicting the man in the bucket.

21 **2. Plaintiffs' Motion *In Limine* No. 2: Exclude or Limit Testimony and/or Depositions of Altec Deponents**

22 Plaintiffs move to exclude testimony and deposition evidence from Randy Mathis and 23 Joshua Chard, who are officials at Altec Corp., a competitor of Defendants. Defendants 24 intend to introduce these witnesses to compare the control panel on the TEL-29N with the 25 panel on Altec's aerial lift in order to show the industry standard in place at the time the 26 TEL-29N was manufactured did not necessarily include an emergency stop button. 27 Defendants also intend to show how their competitors designed and implemented their 28

- 11 -

1  products in order to comply with industry standards. Plaintiffs contend that Mathis and Chard
2  lack sufficient knowledge not only of the TEL-29N, but also of the products produced by
3  their own companies. However, the record is sufficient to establish the competency of these
4  witnesses to testify to the limited question of control panel comparison (as opposed to the
5  intricate mechanical design of the two products). Plaintiffs argue this evidence would be
6  unfairly prejudicial to their case, but do so in only conclusory terms. The Court also rejects
7  Plaintiffs' argument that testimony by Mathis or Chard would be duplicative of testimony
8  by Ken Krause, another defense expert. These witnesses' testimony will focus on design
9  standards in the industry regarding the upper control panel of an aerial lift device, while Mr.
10 Krause's testimony will focus on the TEL-29N specifically.

11 Plaintiffs also argue that Defendants are attempting to circumvent the court's rules on
12 expert testimony, but the court rejects that argument because Mathis and Chard were
13 previously disclosed as expert witnesses as early as April 2004. Plaintiffs' motion is denied.

### 3. **Plaintiffs' Motion *In Limine* No. 3: Exclusion of Testimony of Alleged Contributory Negligence**

Plaintiffs have moved to exclude "[a]ny and all testimony, argument, or reference to any document purporting to show that Armando Friend's alleged negligence contributed to the accident." Plaintiffs argue this material is not relevant because: (1) negligence is not a defense to a strict product liability action; (2) it is not relevant; and (3) even if it is a proper defense or the evidence is otherwise relevant, its probative value is substantially outweighed by the danger of unfair prejudice and confusion.

Using a theory of strict product liability, Plaintiffs allege Armando Friend was injured because the boom he was working in was defective.[5] To prevail on their claim, Plaintiffs will need to prove that the bucket truck was defective, that it was unreasonably dangerous, that the truck was being used in an intended, normal and anticipated manner, and that Friend's

---

[5] Plaintiffs have withdrawn their claim of negligence against Defendants.

- 12 -

injuries were caused by the defective truck. *See Amburgery v. Holan Division of Ohio Brass Co.*, 124 Ariz. 531, 532, 606 P.2d 21, 22 (1980).

As Plaintiffs note, contributory negligence is not a defense to a strict products liability suit. *Jimenez v. Sears, Roebuck and Co.*, 183 Ariz. 399, 402, 904 P.2d 861, 864 (1995). "Contributory negligence is not applicable to strict liability because, under the doctrine of strict liability, no duty rests upon the ultimate consumer or user to search for or guard against the possibility of product defects." *Id.* Rather, the two recognized *affirmative* defenses to a strict products liability claim are: (1) assumption of risk and (2) product misuse. *Id.* Arizona defines these various liabilities as follows.

> (1) Failure to discover a defect in the product which the plaintiff should, if he was reasonably diligent, have discovered is *contributory negligence*; (2) notwithstanding the discovery of such a defect, if the plaintiff nevertheless uses the article it is *assumption of risk*; and (3) the plaintiff's use of the product for certain purposes or in a manner not reasonably foreseen by the manufacturer is *misuse*.

*Id.* (emphasis added; internal quotations and brackets deleted), citing *O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 561, 447 P.2d 248, 253 (1968).

There is no suggestion that Plaintiff "misused" the boom as defined by the controlling legal standard. Defendants argue that Friend caused the injury himself by intentionally raising the boom too high because he sought to "sight the line," meaning that he raised his bucket over a roof to spot the cable line he was assigned to disconnect. However, according to Defendants' response, this alleged misuse was reasonably foreseeable: "The habit of raising a bucket up higher to spot the cable line is a commonly-recognized misuse of a bucket truck in the cable industry called 'sighting the line.'" Therefore, even if Plaintiff did in fact intentionally "sight the line," that action was reasonably foreseeable by Defendants. It is also reasonably foreseeable that a boom operator would not wear a safety hat or harness. Therefore, if the bucket truck was defective, it does not matter whether sighting the line or failing to wear a hat and harness were negligent because "some abnormal or unintended uses will not constitute a legal misuse of the product if they are reasonably foreseeable." *Kavanaugh v. Kavanaugh*, 131 Ariz. 344, 349, 641 P.2d 258, 263 (Ct. App. 1982). It is

- 13 -

1  Defendants' burden to prove misuse, and whether the product was misused is ordinarily a
2  question for the jury "unless reasonable minds could not differ." *Id.* In this case, given
3  Defendants' assertion that sighting the line is a well-known common practice, albeit an
4  allegedly negligent one, a reasonable jury could not conclude that sighting the line was
5  unforeseeable.

6  Defendants argue Friend knew the dangers associated with "sighting the line," but
7  proceeded to assume the risk nonetheless. However, he could not have legally assumed the
8  risk unless there is evidence that he had discovered the alleged defect in the boom, and
9  proceeded to operate it even in the face of *that* known danger, not the danger of "sighting the
10 line." *See O.S. Stapley* at 561.

11 However, even though Defendants cannot introduce evidence that Friend's negligence in
12 "sighting the line" contributed to the injuries caused by the defective bucket truck, they are
13 not foreclosed from arguing that Friend's actions were the *sole cause* of his injuries. "The
14 doctrine of proximate cause is still a factor to be considered in a strict tort liability case. If
15 there was no defect in [the product] and Plaintiff's acts were the sole proximate cause of his
16 injuries, there could be no liability on the defendant." *McCarty v. F.C. Kingston Co.*, 22
17 Ariz.App. 17, 18, 522 P.2d 778, 779 (Ct. App. 1974); *see also Ponte v. Harley Davidson*
18 *Motor Co.*, 732 S.W.2d 561, 562-63 (Mo. Ct. App. 1987) ("[A] defendant in a strict liability
19 action may advance a different explanation of the sole cause of an injury, including a
20 plaintiff's alleged carelessness or negligent conduct, to support its argument that the product
21 is not defective or the alleged defect did not cause the injury."). Therefore, Defendants are
22 prohibited from arguing that even if the product was defective, Armando Friend's negligence
23 contributed to his injuries; however, Defendants may argue that the bucket truck was not
24 defective and that Friend's negligence was the *sole cause* of his collision with the power
25 lines.

26 Defendants also wish to offer evidence that Friend had a habit of not wearing his safety
27 harness or hat while working. Under Fed. R. Evid. 406, "[e]vidence of the habit of a person
28 or of the routine practice of an organization, whether corroborated or not and regardless of

- 14 -

the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." Essentially, Defendants wish to introduce this evidence to prove that Plaintiff has a habit of engaging in negligent working habits to show that Friend's negligence was the sole cause of the accident. However, this is not appropriate evidence of habit. To establish a habit, Defendants would need to show that Friend's actions were "semi-automatic," such as "the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving." Advisory Committee Notes to Fed. R. Evid. 406. Evidence that Friend often did not wear safety equipment is not of this sort; furthermore, this evidence is not specific or frequent enough to qualify as habit. *See United States v. Angwin*, 271 F.3d 786, 800 (9th Cir. 2001) (Evidence that police officer takes a non-confrontational course of action in dangerous situations is not habit evidence probative of how he acted on a specific occasion); *Jones v. Southern Pacific R.R.*, 962 F.2d 447, 449 (5th Cir. 1992) (nine safety violations insufficient to establish habit of negligence). Therefore, introduction of this habit evidence is not allowed for the purpose given by Defendants.

Defendants argue that Plaintiffs' alleged negligence in not wearing his safety harness precluded him from leaping from the bucket and dangling in the air to avoid contact with the electrical wires. There is no possibility that these failures could be the sole cause of the accident; as such, these failures are evidence only of contributory negligence and must be excluded because contributory negligence is not available as a defense. *See* Stapley at 561; Hogue *v. A.B. Chance Co.*, 592 P.2d 973, 975 (Ok. 1978) (evidence that plaintiff was not wearing insulated gloves when he collided with power lines "sounds in contributory negligence" and "is not a relevant consideration in the manufacturer's products liability action...").

Therefore, the Court grants Plaintiffs' motion to exclude any and all testimony, argument, or reference to any document purporting to show that Armando Friend's alleged negligence contributed to the accident because contributory negligence is not a proper defense to

Plaintiffs' strict products liability claim. However, Defendants are not precluded from arguing that the product was not defective, and that Friend's negligence was the *sole cause* of the accident.

### 4. Plaintiff's Motion *In Limine* No. 4: Exclusion of Evidence Regarding the Lack of Other Incidents

Plaintiffs have moved to exclude evidence that there have not been any prior accidents with the TEL-29-TCI or other TEL-29 products. They argue that although a federal court sitting in diversity typically applies federal rules of evidence, a court should apply state rules of evidence because "state evidence rules that are intimately bound up with the state's substantive decision making must be given full effect by federal courts sitting in diversity." *Feldman v. Allstate Insurance Co.*, 322 F.3d 660, 666 (9th Cir. 2003). However, the Arizona Supreme Court has stated that the evidence of a lack of prior accidents "is more evidentiary than substantive in nature." *Jones v. Pak-Mor Manufacturing Co.*, 145 Ariz. 121, 126, 700 P.2d 819, 824 (1985); *see also Espeaignnette v. Gene Tierney Co., Inc.*, 43 F.3d 1 (1st Cir. 1994) (holding that the Federal Rules of Evidence govern the admissibility of evidence of the lack of other accidents in a diversity suit). Therefore, this Court applies the Federal Rules of Evidence in determining whether to admit evidence of the lack of prior accidents.

Plaintiffs argue that such evidence is excludable under the federal rules because Defendants have not kept sufficient records to state with reasonable certainty that there were no prior accidents. Defendants, in their response, state that they do not intend to offer such testimony, and does not counter Plaintiffs' argument. Therefore, the Court grants Plaintiffs' motion to exclude testimony by company witnesses that there were no prior accidents with the TEL-29. However, Defendants do assert that they intend to introduce such testimony through its expert witness. Assuming Defendants can lay an adequate foundation that the expert would be aware of such accidents, the testimony of a lack of prior accidents is admissible, and on this point, Plaintiffs' motion is denied.

### IV. Conclusion

Accordingly, it is HEREBY ORDERED as follows:

1. Defendants' motion *in limine* Nos. 1 and 2 are GRANTED in part and DENIED in part.

2. Defendants' motions *in limine* Nos. 3 and 4 are DENIED.

3. Plaintiffs' motions *in limine* Nos. 1, 3 and 4 are GRANTED in part and DENIED in part.

4. Plaintiff's motion *in limine* No. 2 is DENIED.

5.  **The Court shall hold a pretrial conference in this case on <u>9/18/06 at 3:00 p.m.</u>; the parties shall refer to the Court's previous Scheduling Order in preparation for this conference and should be prepared to discuss the issues raised by the Court in relation to Defendant's motion *in limine* No. 2**.

DATED this 28th day of July, 2006.

_____
Cindy K. Jorgenson
United States District Judge